UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ROBERT CARLE,
    *Plaintiff*,

v.

No. 3:15-cv-01724 (JAM)

RED THREAD SPACES, LLC,
    *Defendant*.

## RULING ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Robert Carle worked as a foreman for defendant Red Thread Spaces, LLC, a company that installs office furniture and builds cubicles. After plaintiff tested positive for marijuana in 2013, the company suspended him without pay until he could provide a clean drug test. He never did so. He failed a second test. He adulterated the sample for his third test. And then he altogether failed to appear for the fourth scheduled test. Not surprisingly, the company terminated plaintiff's employment.

Plaintiff has filed this lawsuit claiming that the company's termination of his employment was a violation of his rights under the federal Family Medical Leave Act (FMLA). I do not agree. Accordingly, I will grant the company's motion for summary judgment.

### BACKGROUND

The following facts are either agreed upon by both parties or presented in the light most favorable to plaintiff as the non-moving party. Plaintiff worked for defendant as an installation foreman, and he was responsible for driving delivery vehicles. Doc. #30, ¶ 3. He understood that his position qualified as "safety-sensitive" by the Connecticut Department of Labor, and that he was prohibited from using marijuana by defendant's Anti-Drug and Alcohol Misuse Policy ("drug policy") and subject to random urinalysis drug testing. *See* Docs. #30, ¶¶ 5–7; #36-4 at 28.

According to the drug policy, "any safety-sensitive employee who has tested positive for drug use or alcohol misuse during a random drug screen or alcohol test [must] be immediately suspended without pay and evaluated by a Substance Abuse Professional." Doc. #31-2 at 20, 28–29. The substance abuse professional might then make a recommendation of a course of substance abuse treatment or education, with which the employee must comply. *See id.* at 20. If the professional has determined "employee compliance with all education and/or treatment recommendations, the employee may then submit to a return to duty drug and/or alcohol test. This testing must be performed and negative results must be on file with the [designated employer representative] prior to the employee returning to safety-sensitive duties. If a return to duty test is cancelled, the employee must submit to an additional test, and a negative result must be on file prior to returning to safety-sensitive duties." *Ibid*.

With respect to termination, the drug policy provides that "[a]ny safety-sensitive employee who has a confirmed positive drug screen result more than one time during any 36 month period will face immediate termination of employment." *Id.* at 28. The policy does not exempt from the 36-month period any term of mandatory suspension on account of an initial positive drug screen result. In addition, "[a]ny safety sensitive employee who refuses to take a required drug test will be subject to immediate disciplinary action up to termination." *Ibid*.

The policy provides several definitions for refusal to take a drug test:

An employee is considered to have refused a drug test if that employee: . . .

Does not report for any test . . . within the reasonable time frame set by [defendant] after being notified of the test; [or] . . .
Does not take an additional drug test when directed by [defendant] or the drug screen collector . . . .

Additionally, if the Medical Review Officer determines that the employee's urine specimen was adulterated or substituted, it would be considered a refusal to test.

*Id.* at 26. The drug policy defines "adulterated specimen" as a "urine specimen containing a substance that is not a normal constituent or containing an endogenous substance at a concentration that is not a normal physiological concentration." *Id.* at 6.

Defendant subjected plaintiff to a random drug test on November 6, 2013. Because plaintiff used marijuana on an almost daily basis, it came as no surprise that plaintiff tested positive for marijuana. *See* Doc. #30, ¶¶ 12-13. In accordance with the company's drug policy, defendant issued plaintiff a written advisory explaining that he was immediately suspended without pay, required him to see a substance abuse professional, and prohibited him from returning to work until he yielded a negative drug test. Docs. #30, ¶¶ 14–15; #31-2 at 53. Although defendant gave plaintiff paperwork indicating in handwriting that "FMLA has been approved," plaintiff had not asked for FMLA leave; nor did plaintiff review this paperwork or recall discussing FMLA leave during the suspension meeting. *See* Docs. #30, ¶¶ 16–18; #31-2 at 58.

Plaintiff immediately went to a substance abuse professional, and the professional afterwards told the parties that no substance abuse treatment or education was needed and that plaintiff was eligible to return to work after submitting a negative drug test. *See* Doc. #30, ¶¶ 19, 22. Plaintiff did not pursue or receive any substance abuse treatment other than this initial evaluation, Doc. #30, ¶ 23, and he otherwise was healthy and physically capable of working. *See* Doc. #36-4 at 62–63, 110. He scheduled his return-to-duty test for December 12, a little more than 30 days from the date of the first test. *See* Docs. #35 at 9, ¶ 18; #36-4 at 30.

On December 17, the parties learned that plaintiff had failed his December 12 return-to-duty drug test. *See* Doc. #30, ¶ 29. After defendant informed plaintiff that he would be required

to take a second return-to-duty test the next day, plaintiff decided to buy and consume a product that he understood was designed to assist individuals to pass a drug test. Doc. #30, ¶ 30.

Plaintiff took his second return-to-duty test on December 18. At around noon on December 23, the laboratory informed Beth Jacobson, defendant's Vice President of Human Resources, that it was cancelling those test results on the ground that the specimen was unusable because plaintiff had done something to mask the results of the test. Docs. #30, ¶ 32; #36-3 at 65. Jacobson was told that "it was not a human specimen that was presented." Doc. #36-3 at 65. At 12:49 p.m., Jacobson called plaintiff to tell him that the test results had been cancelled, either because of dilution or because he had been "on something." Doc. #31-3 at 48.

She then instructed plaintiff to submit to a third return-to-duty test by that same day. Doc. #30, ¶ 33; #31-3 at 49-50. But plaintiff apparently hit traffic on the way to the testing center, so he called Jacobson and her assistant at 1:40 p.m., and left a message informing them that he would be unable to make it on time. Docs. #35, ¶¶ 32-33; #31-3 at 51-52. Yet rather than show up late for the test, plaintiff simply went home. Doc. #31-3 at 53. Having never received a clean drug test from plaintiff, defendant eventually terminated plaintiff's employment near the end of December or early January of the next year. Doc. #25, ¶ 28.

On October 28, 2015, plaintiff filed this action against defendant in the Connecticut Superior Court, which defendant removed to this Court on November 23, 2015. Plaintiff has filed an amended complaint alleging two interrelated violations of the Family Medical Leave Act (FMLA). First, plaintiff alleges that defendant's termination of his employment constituted unlawful *interference* with his right to take FMLA leave. Doc. # 27 at 7. Second, plaintiff alleges that defendant's termination of plaintiff's employment constituted unlawful *retaliation* against

4

plaintiff for the exercise of his right to take FMLA leave. *Ibid.* Following a period of discovery, defendant has moved for summary judgment.

## DISCUSSION

The principles governing a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*). "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). The evidence adduced at the summary judgment stage must be viewed in the light most favorable to the non-moving party and with all ambiguities and reasonable inferences drawn against the moving party. *See, e.g.*, *Tolan*, 134 S. Ct. at 1866; *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). All in all, "a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan*, 134 S. Ct. at 1866 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The Second Circuit recognizes two types of FMLA claims: "interference" claims and "retaliation" claims. *See Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004) (*per curiam*). For plaintiff's claim of FMLA interference, he must establish that (1) he is an eligible employee under the FMLA; (2) defendant is a covered employer; (3) he was entitled to take FMLA leave; (4) he gave notice to defendant of his intention to take leave; and (5) he was denied benefits to which he was entitled under the FMLA. *See Graziadio v. Culinary Inst. of Am.*, 817

F.3d 415, 424 (2d Cir. 2016); 29 U.S.C. § 2615(a)(1). The parties dispute the last three prongs of this test.

As to the third prong, plaintiff would be entitled to take FMLA leave if he experienced a qualifying event enumerated in 29 U.S.C. § 2612(a)(1). One such qualifying event is a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" is an "illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider," 29 U.S.C. § 2611(11), and to be a qualifying "serious health condition," that condition must "make[ ] the employee unable to perform the functions of [his] position." 29 U.S.C. § 2612(a)(1)(D). An employee is unable to perform the functions of his position if "the health care provider finds that the employee is unable to work at all or is unable to perform any one of the essential functions of the employee's position within the meaning of the American with Disabilities Act (ADA) . . . ." 29 C.F.R. § 825.123(a).

The FMLA's implementing regulations provide that "[s]ubstance abuse may be a serious health condition if the conditions of §§ 825.113 through 825.115 are met," and if the leave is "taken for treatment for substance abuse by a health care provider . . . ." 29 C.F.R. § 825.119(a). The conditions of §§ 825.113 through 825.115 are met if the substance abuse or treatment resulted in an employee's incapacity (inability to work "due to the serious health condition") for more than three days *and* treatment by a health care provider on at least one occasion, coupled with a regimen of continuing treatment under the supervision of a health care provider. *See* 29 C.F.R. §§ 825.113(b)–(c), 825.115(a)(2).

Assuming an employee's substance abuse is severe enough to cause the employee's incapacity and to require continuing treatment under the care of a health care provider, and

6

assuming that an employee in fact receives that continuing treatment for substance abuse, the FMLA "does not prevent an employer from taking employment action against an employee . . . [on account of] an established policy, applied in a non-discriminatory manner that has been communicated to all employees, that provides under certain circumstances an employee may be terminated for substance abuse, [and] that pursuant to that policy the employee may be terminated whether or not the employee is presently taking FMLA leave." 29 C.F.R. § 825.119(b).

Plaintiff asserts that he was entitled to take FMLA leave because he had the "serious health condition" of substance abuse, and that his forced suspension made him literally "unable to perform the functions of [his] position," 29 U.S.C. § 2612(a)(1)(D), because his employer prohibited his return to work until he could yield a negative drug test, even if—as he testified—he was always physically capable of working. *See* Doc. #36-4 at 62. He asserts that his serious health condition of substance abuse occurred immediately upon his testing positive for the presence of marijuana and that he was rendered "incapacitated" for over three days by virtue of his forced suspension. He also contends that he received a "regimen of continuing treatment under the supervision of a health care provider," 29 C.F.R. § 825.115(a)(2), because defendant required him to take several drug tests, and each drug test he took required a "medical review officer," the "physician . . . responsible for receiving and reviewing laboratory results generated by an employer's drug testing program and evaluating medical explanations for certain drug test results," Doc. #31-2 at 8, to determine whether plaintiff's urine specimen revealed the presence of marijuana.

But defendant contends—and I agree—that plaintiff's positive drug test and forced suspension does not entitle him to the protections of the FMLA in the absence of an actual

7

serious health condition that rendered him unable to perform the functions of his position. Pursuant to the FMLA's implementing regulations, "substance abuse" qualifies as a serious health condition if plaintiff was incapacitated by and actually received a regimen of continuing treatment for this substance abuse; *see* 29 C.F.R. §§ 825.119(a), 825.115(a)(2), 825.113(b)–(c); contemplating, for example, employees with alcoholism or other dangerous addictions. *See, e.g.*, *Basso v. Porter*, 596 F. Supp. 2d 324, 346 (D. Conn. 2009) (alcoholism). The language of the regulation does not support plaintiff's contention that the mere presence of marijuana in plaintiff's body constitutes "substance abuse": it denies FMLA protection to an employee for mere use of a prohibited substance, as opposed to receipt of treatment for substance abuse. *See* 29 C.F.R. § 825.119(a) (discussed in more detail below). No reasonable jury could conclude that the mere presence of marijuana in plaintiff's body constituted "substance abuse" within the meaning of the FMLA and, accordingly, that plaintiff suffered from a "serious health condition."

But plaintiff nonetheless maintains that the molecular presence of marijuana in his system constitutes "substance abuse," and that substance abuse qualifies as a "serious health condition" pursuant to §§ 825.113 through 825.115 because of incapacity and a regimen of continuing treatment. I conclude that plaintiff was not incapacitated within the meaning of the FMLA because he remained physically capable of working; his inability to work was not "due to the serious health condition, treatment therefore, or recovery therefrom," *see* 29 C.F.R. § 825.113(b), but rather was due to his forced suspension until he could provide a negative drug test pursuant to defendant's drug policy. *See Ames v. Home Depot USA, Inc.*, 2009 WL 4673859, at *6 & n.1, *9 (N.D. Ill. 2009) (no incapacity where plaintiff's alcoholism did not actually affect her work performance or render her unable to perform her job functions), *aff'd*, 629 F.3d 665 (7th Cir. 2011). For these same reasons, plaintiff's "substance abuse" did not render him unable to

perform the functions of [his] position," *see* 29 U.S.C. § 2612(a)(1)(D), because it was defendant that prohibited plaintiff from working by operation of its drug policy, and not any health care provider. *See* 29 C.F.R. § 825.123(a) (employee is unable to perform the functions of his position if "health care provider finds that the employee is unable to work at all").

Even if plaintiff's forced suspension could somehow constitute "incapacity" for purposes of the FMLA, his one evaluation by the substance abuse counselor, coupled with a physician's occasional analysis of plaintiff's urine samples, does not qualify as a "regimen of continuing treatment" under 29 C.F.R. § 825.113(c), which involves concrete treatment regimens such as "a course of prescription medication (e.g., an antibiotic) or therapy requiring special equipment to resolve or alleviate the health condition (e.g., oxygen)." Plaintiff's only activity during his forced suspension was passing the time until his body could rid itself of the presence of marijuana. This hardly qualifies as a regimen of continuing treatment. It equally strains credulity to believe that plaintiff's provision of urine to a laboratory constitutes "treatment" for substance abuse, and that this "treatment" was supervised by a health care provider because a licensed physician was required to interpret the results of a plaintiff's urine samples, *see* 29 C.F.R. § 825.115(a)(2). *See* 29 C.F.R. § 825.113(c) ("activities that can be initiated without a visit to a health care provider, [are] not, by [themselves], sufficient to constitute a regimen of continuing treatment for purposes of FMLA leave."). Put simply, plaintiff's forced suspension by operation of defendant's drug policy did not provide him with a "serious health condition."

It is undisputed, moreover, that plaintiff never received any actual treatment for substance abuse; any claim of entitlement to the FMLA is thus precluded, because § 825.119(a) of the implementing regulations provides that "FMLA leave may only be taken for treatment for substance abuse . . . . On the other hand, absence because of the employee's use of the substance,

9

rather than for treatment, does not qualify for FMLA leave." *See also Gilmore v. Univ. of Rochester*, 654 F. Supp. 2d 141, 149 (W.D.N.Y. 2009) ("Although drug addiction itself may qualify as a 'serious health condition' for FMLA purposes, FMLA leave may be taken only for *treatment* for a substance abuse problem, which, as stated, plaintiff apparently had no inclination to seek . . . ." (emphasis in original)); *Ames*, 2009 WL 4673859, at *6 ("[A]n employee suffering from alcoholism that qualifies as a serious health condition is only entitled to FMLA leave when she is receiving treatment for her addiction, not before or after, when she is broadly suffering from her condition."). In light of plaintiff's failure to receive any treatment for substance abuse, no reasonable jury could conclude that plaintiff suffered from a serious health condition and was entitled to FMLA leave during his suspension for rendering a positive drug test.

It is true that defendant initially expected that plaintiff might be required to attend treatment. It is also true that defendant decided to internally approve plaintiff for FMLA leave in advance of his actually requesting it, which is evidenced by defendant's internal form. But the fact that defendant made a notation that plaintiff *could* qualify for FMLA does not estop it from challenging plaintiff's FMLA eligibility now, *see Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 724–25 (2d Cir. 2001) (elements of equitable estoppel—misrepresentation of fact, reasonable reliance to detriment of other party—may estop employer from challenging FMLA eligibility), because defendant did not misrepresent plaintiff's eligibility for FMLA leave.

Had plaintiff decided to receive substance abuse treatment, he would indeed have qualified for FMLA leave. But he did not. And most damagingly, plaintiff did not rely on defendant's representation regarding his FMLA eligibility to his detriment: he testified that he discovered the document noting his advance approval for FMLA leave only *after* he had been terminated and after he had already failed to pursue any substance abuse treatment. *See* Doc.

#36-4 at 44–46. In the absence of reliance to plaintiff's detriment, defendant's internal notation regarding FMLA approval does not mean that plaintiff was eligible for FMLA leave.[1] No reasonable jury on the facts here could otherwise conclude that plaintiff was entitled to FMLA leave.

As an alternative basis for granting summary judgment, plaintiff's FMLA interference claim also fails on the fifth prong because plaintiff was not denied a benefit to which he was entitled under the FMLA. Plaintiff argues that he was denied the essential FMLA benefit of reinstatement to his position, but the FMLA's right to reinstatement is qualified under the circumstances presented here: where an employee takes leave to actually receive substance abuse treatment. Indeed, the regulations implementing the FMLA provide that an employer may take employment action against an employee on protected leave for substance abuse treatment if it "has an established policy, applied in a non-discriminatory manner that has been communicated to all employees, that provides under certain circumstances an employee may be terminated for substance abuse, pursuant to that policy the employee may be terminated whether or not the employee is presently taking FMLA leave." *See* 29 C.F.R. § 825.119(b). Defendant has such an established drug policy providing for an employee's termination if he yields more than one positive drug test during any 36-month period, just as plaintiff did, and also providing for termination if he submits an adulterated urine specimen, just as plaintiff also did. These reasons alone were sufficient bases for plaintiff's termination.

---

[1] For similar reasons, plaintiff would fail on the fourth prong of his interference claim—that he have *requested* FMLA leave. Again, plaintiff did not actually intend to take FMLA leave, let alone request or notify defendant of an intention to take such leave, and I have concluded defendant is not precluded from asserting otherwise because it internally—if erroneously—ostensibly approved plaintiff for FMLA leave in advance of his requesting it. *See* Doc. #34 at 2, 6; Doc. #31-2 at 58. The absence of any reliance by plaintiff on defendant's internal designation would doom plaintiff on this prong, but I need not address it in light of my conclusion that plaintiff's absence did not qualify him for the FMLA's protection, and that the FMLA would not have prohibited his termination in any event.

11

Plaintiff complains that the drug policy was applied to him in a discriminatory manner, citing evidence that Beth Jacobson described him as being a "pain in the ass," both long before and after plaintiff had failed his first drug test, *see* Doc. #31-4 at 16–17, and that her order that he submit to the fourth drug test within two hours of her phone call was unreasonable. *See* Doc. #36-3 at 74–75. Even assuming the time frame given for plaintiff to submit to his fourth drug test had been unreasonable (and despite plaintiff's failure to tell this to Jacobson at the time), plaintiff has provided no evidence that he was treated differently from any other employee that had been similarly subject to defendant's drug policy and yet had provided more than one positive drug test and also an adulterated sample. The evidence of record does not reveal that defendant's drug policy was administered in a discriminatory manner. Plaintiff has therefore failed to show that he was denied any benefit afforded to him under the FMLA, including any qualified right to reinstatement. *See* 29 C.F.R. § 825.119(b). Because no reasonable jury could conclude that plaintiff was eligible for FMLA leave, or that he was denied a benefit to which he was entitled under the FMLA, I will grant the motion for summary judgment on his claim of FMLA interference.

Plaintiff's remaining claim is one for FMLA retaliation, which follows the familiar *McDonnell-Douglas* burden-shifting standard and requires plaintiff to show "that (1) he exercised rights protected under the FMLA; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 147 (2d Cir. 2012) (internal quotation marks omitted). For the reasons discussed above, plaintiff was not entitled to FMLA leave because he never received qualifying treatment for substance abuse, and because he did not intend or actually attempt to

exercise any rights under the FMLA. For that reason alone—because plaintiff had no right in the first place to exercise under the FMLA—plaintiff's retaliation claim fails at the *prima facie* stage.

Even had plaintiff attempted to exercise rights under the FMLA, he has not advanced any evidence that his termination occurred under circumstances giving rise to an inference of retaliation for his exercise of FMLA rights. As to this prong, plaintiff must show that "a causal connection exists between the plaintiff's protected activity and the adverse action taken by the employer." *Donnelly*, 691 F.3d at 152. There is simply no evidence in the record that plaintiff's termination for violating defendant's established drug policy was in any way connected to his exercise of rights under the FMLA, as opposed to his blatant violations of defendant's drug policy. *See* Doc. #36-3 at 88. Nor does Jacobson's comment that plaintiff was a "pain in the ass" or haste to schedule the fourth drug test raise a triable issue regarding whether defendant's stated reason for plaintiff's termination was untrue, or a mere pretext for discriminating against him for taking FMLA leave. Accordingly, I will grant summary judgment to defendant on plaintiff's claim of FMLA retaliation.

## CONCLUSION

Defendant's motion for summary judgment (Doc. #28) is GRANTED on the ground that no genuine fact issue remains to support plaintiff's claims for FMLA interference and FMLA retaliation. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven, Connecticut, this 11th day of September, 2017.

                                                /s/ *Jeffrey Alker Meyer*
                                                Jeffrey Alker Meyer
                                                United States District Judge